Eric Santos, Esq. (ES1223)
MACVEAN, LEWIS, SHERWIN & MCDERMOTT, P. C.
34 Grove Street, P.O. Box 310
Middletown, New York 10940
845-343-3000
esantos@mlsmlaw.com

*Counsel for Plaintiff, ZAMORA ENTERTAINMENT, INC.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

ZAMORA ENTERTAINMENT, INC.,

Plaintiff,

-against-

SERIOUS MUSIC, S. DE R.L. DE C.V., and
WESTWOOD ENTERTAINMENT, S.A. DE C.V.,

Defendants.

-------------------------------------------------------------------x

Civil Action No. 26-cv-9056

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, ZAMORA ENTERTAINMENT, INC., by and through its attorneys, as and for a Complaint against the above-captioned defendants, states and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff is a corporation conducting business as an international live concert event promoter and producer.

2. Defendants are entities acting as legal representatives for artists expected to perform the live concert events pursuant to a concert tour.

3. This matter arises from material breaches of contract, bad faith conduct, and express artist repudiation under a U.S. concert tour agreement, entitled “Contrato de Prestación de Servicios Artísticos – USA” (referred herein as the “USA Agreement”), for the live concert tour of the Latin music group, "CAMILA" (Camila - Adiós... World Tour).

4. Defendants have accepted money advances for the tour but have admitted to significant internal strife among CAMILA, which is expressly stated as a material breach of the USA Agreement.

5. Moreover, Defendant SMU has also materially breached the USA Agreement through its anticipatory breach, repudiation of the contract, obstruction of performance of the contract, dilatory conduct, unreasonable pattern objections, and conduct in direct violation of the multiple clauses of the USA Agreement.

6. Defendant SMU's refusal to perform the agreement, has intentionally, and in bad faith, obstructed Plaintiff's promotion of the concert tour, causing Plaintiff to sustain damages, such as loss of local show costs in the form of venue deposits, promotional material costs for the tour, and legal fees associated with immigration visas for CAMILA members.

7. Defendant SMU refuses to return the money advance paid by Plaintiff despite Plaintiff's formal demand for it.

8. As such, Plaintiff has commenced the instant action seeking full compensatory damages, declaratory relief confirming set-off rights, among other things, together with pre-judgment interest and legal fees.

## THE PARTIES

9. Plaintiff, ZAMORA ENTERTAINMENT, INC. ("ZAMORA"), is a Michigan corporation duly existing under the laws of the State of Michigan.

10. ZAMORA is duly authorized to do business in the State of New York, maintaining a principal place of business at 605 W 48th Street, 3rd Floor, New York, NY 10036.

11. Upon information and belief, Defendant, SERIOUS MUSIC, S. DE R.L. DE C.V. ("SMU"), is a Mexican company organized under the laws of Mexico, with its principal place of business at Privada de Valdivia 10, San Miguel Ajusco, Tlalpan, CDMX, C.P. 14700.

12. Defendant SMU operates as the legal representative of artist, Samuel Parra Cruz p/k/a "SAMO".

13. Upon information and belief, Defendant, WESTWOOD ENTERTAINMENT, S.A. DE C.V. ("Westwood") is a Mexican corporation organized under the laws of Mexico, with its principal place of business at Boulevard Manuel Ávila Camacho No. 191, Despachos 201-202, Miguel Hidalgo, CDMX, C.P. 11510.

14. Defendant Westwood operates as the legal representative of artists, Mario Alberto Domínguez Zarzar p/k/a "MARIO DOMM" and Pablo Hurtado Abaunza p/k/a "PABLO HURTADO".

15. Defendants SMU and Westwood act as co-representatives of the artist group "CAMILA" under the USA Agreement.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over Defendants pursuant to 28 U.S.C. § 1332 because this is a civil action between a citizen of a State and citizens of a foreign state, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00 USD), exclusive of interest and costs.

17. The United States District Court for the Southern District of New York has personal jurisdiction over Defendants pursuant to Clause 24.3 of the USA Agreement, wherein Defendants expressly consented and submitted to the exclusive jurisdiction and venue of this district court.

18. The claims at issue arise directly out of Defendants' transaction of business within the State of New York and the Southern District of New York.

19. Venue is proper in this district because Defendants contractually selected this district, pursuant to Clause 24.3 of the USA Agreement, as the exclusive forum for disputes arising from the agreement, and because a substantial part of the events or omissions giving rise to ZAMORA's claims occurred in this district

## MATERIAL FACTS

20. On July 17, 2026, ZAMORA and Defendants entered into the USA Agreement for a fifteen (15) city arena concert tour across the United States (the "USA Tour").

21. A true and accurate copy of the executed USA Agreement is annexed here as **Exhibit "A."**

22. The USA Agreement identified a tentative route consisting of the fifteen performances, and it required that ZAMORA provide a final route proposal shortly after execution of the agreement.

23. Under the USA Agreement, subsequent modifications relating to dates, cities, venues, and operational conditions were generally subject to mutual written agreement, including by email.

24. The Agreement also authorized ZAMORA to modify, adjust, relocate, or reschedule tour dates, cities, venues, or route elements based on venue availability, logistical or production costs, travel-time limitations, or tour efficiencies, following prior consultation with Defendants, provided that the rescheduled performance occurred within the contractual performance period.

25. The Agreement designated José Alejandro Román García on behalf of SMU and Maribel Cárdenas on behalf of Westwood as the operational representatives for communications with ZAMORA.

26. ZAMORA and Defendants also entered into a Latin America Concert Tour Agreement on July 17, 2026 for a twenty-three (23) city arena concert tour across Latin America (the "LATAM Tour Agreement").

27. While separately signed agreements, the USA Agreement and the LATAM Tour Agreement both contain express written language cross-referencing the other agreement for a total target of thirty-eight (38) concerts combined across both tours.

28. The USA Agreement and the LATAM Tour Agreement also contain express written language cross-linking financial effects of both agreements to provide ZAMORA with a right to automatically offset all advances and amounts paid by ZAMORA to Defendants against the amounts and balances due in connection with the concerts actually performed by Defendants' artists in the event that the number of total concerts is reduced or do not take place.

29. In other words, pursuant to Section 14 of Annex E, Defendants expressly agreed that, should the USA Tour not take place or the amount of concerts be reduced, ZAMORA shall automatically apply and offset the amount of the Advance against any amounts due to Defendants for concerts performed under the LATAM Tour Agreement.

30. The Defendants are currently touring pursuant to the LATAM Tour Agreement.

## I. <u>The Money Advance to SMU</u>

31. In connection with the USA Agreement, ZAMORA paid Defendants money advances pursuant to the agreement, including an advance to SMU in the amount of Three Hundred

Seventy Thousand Four Hundred Seventy-Six Dollars and Fifty Cents ($370,476.50 USD) (the advance to SMU referred herein as the "Advance").

32. Defendants formally acknowledged receipt of the Advance on September 21, 2026.

33. Despite receiving the Advance and despite ZAMORA fulfilling all operational obligations, Defendants engaged in a pattern of dilatory tactics and intentional delays to obstruct the USA Tour.

34. After weeks of efforts by ZAMORA to lock in operational deadlines in performance of the USA Agreement and to prevent the expiration of critical venue holds and protect the commercial viability of the tour, ZAMORA established October 5, 2026, as the firm public launch date for the USA Tour.

35. On October 4, 2026, Defendant SMU unreasonably demanded a complete halt and freeze of the public announcement, setting forth disingenuous and meritless claims that his Advance was late and continuously objecting to submitted promotional materials—weeks after the Advance was received and accepted by SMU.

36. Defendant SMU never rejected or returned the Advance despite its claims or unilateral decision to halt the public announcement of the tour.

## II. CAMILA's Internal Strife

37. Because the USA Tour required multiple performances by three artists, ZAMORA required assurance that the CAMILA artists would work together through the USA Tour.

38. As such, the USA Agreement specifically protected against internal strife among CAMILA artists.

39. Section 7 of Annex E of the USA Agreement contains an express guarantee that, under no circumstance, shall there be an internal dispute among CAMILA, nor shall the individual artists be permitted to withdraw or refrain from participating in the USA Tour.

40. Section 7 of Annex E provides that an artist's withdrawal or nonparticipation in the tour due to an internal dispute or unilateral decision constitutes a material breach requiring the refund of paid advances and reimbursement of unrecoverable local show costs.

41. Section 1 of Annex E defines local costs as direct operating costs incurred by ZAMORA in connection with each concert event that are deductible from gross Box Office receipts under standard concert industry practice, including, without limitation: venue rental, audio, lighting, backline, general venue security, local loading crew (stagehands), ticketing, local catering, scaffolding, government permits, and cancellation insurance

42. The USA Agreement also requires Defendants to indemnify ZAMORA for, among other things, Defendants' material breach, a failure of representation rights, and the withdrawal of a CAMILA member.

43. Clause 24.5 of the Agreement provides that the terms of Annex E govern and override all conflicting provisions in the body of the USA Agreement.

44. On September 24, 2026, José Alejandro Román García, the representative of Defendant SMU, explicitly admitted to internal strife within CAMILA and stated, in writing, that SAMO withdrew from the project due to severe internal hostilities and slander among CAMILA members.

45. While Defendants are currently touring pursuant to the LATAM tour, they have admitted that, because of internal strife, that they do not intend to perform the USA Tour.

46. On October 6, 2026, ZAMORA demanded adequate written assurances that Defendants and the artists they represented would perform their obligations under the USA Agreement.

47. Defendants have failed to factually deny or rebut such claims regarding internal infighting, artist withdrawal, and intention to abandon the USA Tour, nor have they provided any written assurances that they will perform the USA Tour.

48. Instead, Defendant SMU has indicated his anticipatory breach, expressly stated that it was exploring ways to terminate the USA Agreement, and has obstructed performance of the USA Tour.

## III. SMU's Anticipatory Breach & Obstruction of Performance

49. While Defendant SMU refused to acknowledge the internal strife among CAMILA members, Defendant SMU's representative admitted, in writing, that it was exploring ways to terminate the USA Agreement.

50. Rather than formally terminating the USA Agreement and returning the Advance, Defendant SMU has engaged in continuous dilatory tactics to stall operational progress and obstruct the performance of the USA Tour.

51. Such dilatory tactics include raising untimely objections to items it already waived, making unilateral demands prohibited by the USA Agreement, failing to provide reasonable modifications in response to its objections, and unreasonably withholding consent in order to obstruct the performance of the USA Tour.

52. Despite Defendant SMU's conduct, ZAMORA has diligently worked to perform the USA Tour, expending time, money and resources, in good faith, in furtherance of the USA Tour.

53. In accordance with the USA Agreement, ZAMORA organized routes, reserved concert venues, prepared promotional materials and began marketing and advertising for the USA Tour.

54. Despite ZAMORA’s efforts, Defendant SMU’s conduct has made performance of the USA Tour impossible, which is the crux of the USA Agreement.

55. On October 4, 2026, Defendant SMU unilaterally issued demands to freeze and halt the public launch.

56. Defendant SMU’s demand violated Declaration III(a)’s express prohibition against unilateral acts.

57. Defendant SMU's demand was also executed in direct violation of Section 7 of Annex E of the Agreement, which expressly protects against any unilateral action by an artist.

58. One of Defendant SMU’s objections to halt the USA Tour included an objection to the promotional materials submitted by ZAMORA.

59. Clause 13.1 of the USA Agreement required Defendants to approve or object, in writing, to promotional materials within 72 hours after receipt.

60. Clause 13.1 also provided that a failure to respond within the 72-hour period constituted full and definitive acceptance of promotional materials.

61. ZAMORA submitted all promotional materials, press assets, and marketing plans to Defendants well in advance of the mandatory 72-hour review window under Clause 13.1.

62. Defendant SMU failed to issue specific, technical written objections within the mandatory 72-hour window under Clause 13.1.

63. Instead, Defendant SMU continuously issued pattern objections to each promotional material without any consideration as to its content or with any significant objections, simply to cause delay and obstruction of the contract.

64. When objecting to the promotional materials, Defendant SMU unilaterally demanded to halt the public announcement of the USA tour.

65. The USA Agreement did not afford Defendant SMU with an ability to unilaterally demand a halt to the USA Tour over promotional materials, routing or venue adjustments.

66. Despite Defendant SMU's pattern objections and unilateral demand, Defendant SMU failed to communicate any coherent revisions or specific changes to promotional materials.

67. Nevertheless, Defendant SMU continuously objected to all promotional materials submitted by ZAMORA.

68. Defendant SMU's unilateral actions and dilatory tactics obstructed the USA Tour and its announcement, and has jeopardized venue holds, ticketing setups and commercial viability of the tour.

69. Defendant SMU also objected to venue logistics and tour routing in its demand to halt the USA Tour.

70. Pursuant to Subclause 1.3.1, ZAMORA fully satisfied its consultation obligations by submitting updated routings to Defendants.

71. Co-representative Defendant Westwood gave positive reception and formal alignment regarding updated tour routings pursuant to Subclause 1.3.1.

72. Defendant SMU claimed that the routing and venue adjustments were unapproved modifications and constituted a breach of the USA Agreement.

73. Subclause 1.3.1 of the USA Agreement grants ZAMORA authority to adjust routes subject to prior consultation with Defendants' co-representatives.

74. Subclause 1.3.1 also provides that any reasonable modification or adjustment would not constitute a breach of the USA Agreement.

75. Defendant SMU’s claims regarding routing and venue adjustments were unfounded, unreasonable, and an obvious play to frustrate performance of the USA Agreement while attempting to wrongfully keep the Advance.

## IV. Valid Termination of the USA Agreement

76. On October 6, 2026, ZAMORA issued a formal Demand for Adequate Assurances, granting Defendants 24 hours to provide unconditional written confirmation of performance.

77. Defendants failed to provide adequate assurances and failed to cure their actual material defaults.

78. Because of Defendants’ material breaches, ZAMORA has validly terminated the USA Agreement.

79. In conjunction with such termination, ZAMORA has demanded the return of the Advance.

80. Defendant SMU has failed and refused to return the Advance.

81. Defendants are contractually and legally required to return the full Advance and indemnify ZAMORA from all unrecoverable local show costs but have failed to do so.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT – USA AGREEMENT
**(Annex E, Section 7 – Guarantee Against Internal Disputes & Artist Withdrawal)**
**(Against All Defendants)**

82. ZAMORA repeats and realleges each of the allegations set forth in paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83. The USA Agreement is a valid, binding contract among the parties.

84. The parties contractually stipulated and agreed that the USA Agreement is governed by New York Law.

85. ZAMORA fully performed its material obligations that were due before Defendants' material breach, including paying the $370,476.50 USD Advance.

86. Any further performance by Zamora was excused by Defendants' material breach and repudiation.

87. Defendants materially breached Section 7 of Annex E of the Agreement through the express withdrawal of artist Samo and by halting tour execution due to internal band member hostilities and equity disputes.

88. Defendants' material breach mandates an immediate full refund of the Advance under Section 7 of Annex E.

89. As a direct and proximate result of Defendants' breach, ZAMORA has suffered damages in an amount to be determined at trial, but in no event less than Three Hundred Seventy Thousand Four Hundred Seventy-Six Dollars and Fifty Cents ($370,476.50 USD), plus applicable interest and costs and disbursements.

90. All conditions precedent have been performed, satisfied, or waived.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT – USA AGREEMENT
## (Clause 13.1, Subclause 1.3.1, & Declaration III(a) – Promotion Materials & Routing Adjustments)
## (Against Defendant SMU)

91. ZAMORA repeats and realleges each of the allegations set forth in paragraphs 1 through 90 of this Complaint as if fully set forth herein.

92. Defendant SMU entered into the valid and binding USA Agreement.

93. Defendant SMU contractually stipulated and agreed that the USA Agreement is governed by New York Law.

94. After Defendant SMU received the Advance paid by ZAMORA, Defendant SMU engaged in multiple acts, in bad faith, to directly cause the tour to become commercially unviable.

95. Defendant SMU's unilateral demands to freeze and halt the public launch of the USA Tour violated Declaration III(a)'s express prohibition against unilateral acts and Section 7 of Annex E of the USA Agreement, which also expressly protects against any unilateral action by an artist.

96. Defendant SMU's continuous vague pattern objections to the promotional materials failed to include any specific objections for the parties to reach consensus or for ZAMORA to remediate.

97. Defendant SMU's objections were made merely to delay and obstruct the performance of the USA Tour.

98. Defendant SMU's pattern objections failed to comply with Clause 13.1 of the USA Agreement.

99. Defendant SMU's objections as to tour routing and venue adjustments pursuant to Subclause 1.3.1 of the USA Agreement were unfounded, and SMU's objections obstructed the performance of the tour.

100. ZAMORA fully performed its material obligations that were due before Defendant SMU's material breach.

101. Alternatively, any further performance by ZAMORA was excused by Defendants' material breach and repudiation.

102. Given the foregoing material breaches of the USA Agreement, ZAMORA was forced to validly terminate the agreement.

103. ZAMORA has demanded that Defendant SMU return the Advance.

104. Defendant SMU has refused to return the Advance.

105. As a direct and proximate result of Defendants' breach, ZAMORA has suffered damages in an amount to be determined at trial, but in no event less than Three Hundred Seventy Thousand Four Hundred Seventy-Six Dollars and Fifty Cents ($370,476.50 USD), plus applicable interest and costs and disbursements.

106. All conditions precedent have been performed, satisfied, or waived.

**THIRD CAUSE OF ACTION**
**CONTRACTUAL INDEMNIFICATION**
**(24.4 Indemnification)**
**(Against All Defendants)**

107. ZAMORA repeats and realleges each of the allegations set forth in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108. Clause 24.4 of the USA Agreement requires Defendants to indemnify ZAMORA and hold it harmless from all losses resulting from Defendants' material breach, failures concerning representation rights, and the withdrawal of a CAMILA member.

109. Defendant SMU's written statements as to internal strife among CAMILA, including Samo's withdrawal or refusal to participate in the USA Tour, constituted a material breach of the USA Agreement.

110. Moreover, Defendant SMU's anticipatory breach, repudiation of the contract, obstruction of performance of the contract, dilatory conduct, unreasonable pattern objections, and conduct in direct violation of the multiple clauses of the USA Agreement, also constituted material breaches of the USA Agreement.

111. Defendants' material breaches triggered Defendants' contractual indemnification obligations to ZAMORA.

112. ZAMORA has incurred, and continues to incur, losses as a result of Defendants' conduct for unrecovered and/or unrecoverable local show costs.

113. Such unrecovered and/or unrecoverable local show costs include, without limitation, approximately $200,000.00 USD paid by ZAMORA for anticipated venue deposits, approximately $150,000.00 USD paid or incurred by ZAMORA for promotional materials, and approximately $15,000.00 USD incurred by ZAMORA for legal fees and costs for immigration counsel to obtain visas for Defendants' artists.

114. As a direct and proximate result of Defendants' breach, ZAMORA has suffered damages in an amount to be determined at trial, but in no event less than Three Hundred Seventy Five Thousand Dollars and Zero Cents ($375,000.00 USD), for all unrecoverable and/or unrecovered local show costs, plus applicable interest.

115. Defendants have failed to indemnify ZAMORA for any such covered losses.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGEMENT**
**(28 U.S.C. § 2201 et seq.)**
**(Against All Defendants)**

116. ZAMORA repeats and realleges each of the allegations set forth in paragraphs 1 through 115 of this Complaint as if fully set forth herein.

117. An actual, justiciable controversy exists between ZAMORA and Defendants concerning the legal status of the USA Agreement and the parties' respective rights and obligations following Defendants' material breaches of the agreement.

118. ZAMORA seeks a declaration that it validly terminated the USA Agreement for cause due to Defendants' material breaches of the agreement.

119. ZAMORA seeks a further declaration that Defendants' material breach and repudiation excused ZAMORA from further performance and further payments under the Agreement.

120. ZAMORA seeks a further declaration that, pursuant to Section 14 of Annex E of the USA Agreement, ZAMORA is entitled to immediate cross-collateralized set-off to deduct and freeze all unrecovered advances against any present or future concert revenues or settlements obtained pursuant to the linked LATAM Tour Agreement.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Against Defendant SMU)**

121. ZAMORA repeats and realleges each of the allegations set forth in paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122. While a valid, binding and enforceable agreement exists among the parties, ZAMORA pleads this cause of action in the alternative to the extent the contract is deemed invalid, nonbinding and/or unenforceable.

123. ZAMORA entrusted Defendant SMU with the Avance of $370,476.50 USD.

124. When ZAMORA tendered the Advance, it did so under the reasonable expectation that Defendants, including SMU, would fulfill their artistic performance obligations and not obstruct the performance of the USA tour or the USA Agreement.

125. Defendant SMU benefited from ZAMORA's payment of the Advance.

126. ZAMORA relied on Defendant SMU to operate in good faith and to fairly work with ZAMORA to carry out the USA Tour.

127. ZAMORA relied on Defendant SMU's representations to ZAMORA's own detriment.

128. Defendants failed to render any artistic performances under the USA Tour.

129. Defendant SMU obstructed the performance of the USA Agreement, obstructed the performance of the USA Tour, and refused to return the Advance.

130. Defendant SMU has been unjustly enriched at ZAMORA's expense in the amount of $370,476.50 USD.

131. Equity and good conscience demand that Defendants compensate ZAMORA and return the Advance.

132. As a direct result, Defendants are liable to ZAMORA for the Advance in an amount to be determined at trial, but in no event less than Three Hundred Seventy Thousand Four Hundred Seventy-Six Dollars and Fifty Cents ($370,476.50 USD), plus applicable interest and costs and disbursements.

## JURY DEMAND

133. Plaintiff, Zamora Entertainment, Inc., requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Zamora Entertainment, Inc., respectfully requests judgment against Defendants, jointly and severally:

1. On its First, Second, and Fifth Causes of Action, granting Plaintiff a money judgment in an amount to be determined at trial, but in no event less than $370,476.50 USD for unearned advances, plus applicable interest;

2. On its Third Cause of Action, granting Plaintiff a money judgment in an amount to be determined at trial, but in no event less than $375,000.00 USD for unrecovered and/or unrecoverable local show causes in performance of the contract, plus applicable interest;

3. On its Fourth Cause of Action, granting Declaratory Judgment declaring that the USA Agreement was validly terminated, that Plaintiff is used from further performance of it, and confirming Plaintiff's right of set-off under Section 14 of Annex E;

4. Awarding Plaintiff all costs and disbursements incurred in bringing this action;

5. Granting Plaintiff such other and further relief as the Court deems just and equitable.

Dated: New York, New York
October 14, 2026

Yours, etc.,

MACVEAN, LEWIS, SHERWIN
& MCDERMOTT, P. C.
*Attorneys for Plaintiff*
*ZAMORA ENTERTAINMENT, INC.*

By: ______________________
ERIC SANTOS, ESQ.
34 Grove Street, P.O. Box 310
Middletown, New York 10940
845-343-3000
esantos@mlsmlaw.com